UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NO. 26-1541, 26-1542

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

JACOB BERTRAND
Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

THE HONORABLE STEPHANIE M. ROSE
CHIEF UNITED STATES DISTRICT COURT JUDGE

APPELLANT'S BRIEF AND ARGUMENT (filed pursuant to *Anders v. California*)

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, & Jaeger
2322 East Kimberly Road, Suite 140S
Davenport, Iowa 52806
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754/563-355-6666
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT-APPELLANT**

# SUMMARY OF THE CASE

Mr. Jacob Bertrand ("Defendant") was indicted in the Southern District of Iowa with Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1) (count 1); Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (count 2); and Possession of Obscene Visual Representation of the Sexual Abuse of Children, in violation of 18 U.S.C. §§ 1466A(b)(1) and (d)(4) (count 3). (R. Doc. 2, 25-cr-7). In 3:14-cr-60, a Petition for Warrant or Summons for Offender Under Supervision was filed. (R. Doc. 123, 14-cr-60). On July 7, 2025, Defendant filed a motion to suppress, which was denied. (R. Doc. 24, 25, 38, 25-cr-7). Defendant entered a conditional plea of guilty to count 1. (R. Doc. 43, 25-cr-7).

On March 17, 2026, Defendant appeared for combined sentencing and final revocation hearing. (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60). Defendant was sentenced to 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments. (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; Add. p. 1).

Defendant appeals the order denying suppression and his sentence.

Counsel submits this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967); *accord Robinson v. Black*, 812 F.2d 1084 (8th Cir. 1987). Defendant does not request oral argument.

ii

# TABLE OF CONTENTS

**SUMMARY OF THE CASE**................................................................. ii

**TABLE OF CONTENTS** ................................................................ iii

**TABLE OF AUTHORITIES** ............................................................ iv

**JURISDICTIONAL STATEMENT**.....................................................1

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ......................3

**STATEMENT OF THE CASE** ...........................................................5

**SUMMARY OF THE ARGUMENT** .....................................................9

**ARGUMENT** .............................................................................10

**I. DEFENDANT'S STATEMENTS SHOULD HAVE BEEN SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF *MIRANDA* AND ITS PROGENY** .............................................................................10

    *A. Standard of Review* ...............................................................10

    *B. Admission of Defendant's Statements to the U.S. Probation Officer in the U.S. Probation Office Violates* Miranda .......................................................10

    *C. Admission of Defendant's Statements to the U.S. Probation Officer in the U.S. Probation Office Were Involuntary* .........................................................16

**II. DEFENDANT'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE AND CONTRARY TO JUSTICE**....................................19

    A. Standard of Review........................................................................19

    B. Defendant's Sentence was Unreasonable and Greater than Necessary to Achieve the Goals of Sentencing .........................................................21

**CONCLUSION**...........................................................................27

**CERTIFICATE OF COMPLIANCE** ..................................................29

**CERTIFICATE OF FILING AND SERVICE** .......................................30

Appellate Case: 26-1542    Page: 3    Date Filed: 06/02/2026 Entry ID: 5646846

# TABLE OF AUTHORITIES

**Cases**

*Anders v. California*, 386 U.S. 738 (1967)...................................................... ii, 9, 27

*Berkemer v. McCarty*, 468 US. 420 (1984) ............................................................11

*Brady v. U.S.*, 397 U.S. 742 (1970) ......................................................................17

*Cal. v. Beheler*, 463 U.S. 1121 (1983).................................................................11

*Culombe v. Connecticut*, 367 U.S. 568 (1961) .....................................................17

*Gall v. U.S.*, 552 U.S. 38 (2007) .................................................................... 19, 20

*Jenner v. Smith*, 982 F.2d 329 (8th Cir. 1993)......................................................17

*Minnesota v. Murphy*, 465 U.S. 420 (1984) .................................................. 5, 16, 18

*Miranda v. Arizona*, 384 U.S. 436 (1966) ...................................................... 10, 14, 17

quoting *U.S. v. Rorex*, 737 F.2d 753 (8th Cir. 1984)..............................................13

*Rhode Island v. Innis*, 446 U.S. 291 (1980)..........................................................14

*Robinson v. Black*, 812 F.2d 1084 (8th Cir. 1987) .......................................... ii, 9, 27

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)...................................................17

*Smith v. Bowersox*, 311 F.3d 915 (8th Cir. 2002)...................................................17

*State v. Miranda*, 672 N.W.2d 753 (Iowa 2003) ....................................................14

*State v. Ortiz*, 766 N.W2d 244 (Iowa 2009) ................................................. 11, 17, 18

*State v. Peterson*, 663 N.W.2d 417 (Iowa 2003) ....................................................14

Appellate Case: 26-1542    Page: 4    Date Filed: 06/02/2026 Entry ID: 5646846

*Thompson v. Keohane*, 516 U.S. 99 (1995) ................................................................11

*Trobee v. U.S.*, 2011 U.S. Dist. LEXIS 14003 (Dist. S.D. Feb. 11, 2011)..............16

*U.S. v. Bevins*, 848 F.3d 835 (8th Cir. 2017) ...........................................................19

*U.S. v. Boykin*, 850 F.3d 985 (8th Cir. 2017)...........................................................19

*U.S. v. Czichray*, 378 F.3d 822 (8th Cir. 2004) ................................................. 11, 13

*U.S. v. Desantiago-Esquivel*, 526 F.3d 398 (8th Cir. 2008) ....................................19

*U.S. v. Feemster*, 572 F.3d 455 (8th Cir. 2009)................................................. 19, 20

*U.S. v. Helmel*, 769 F.2d 1306 (8th Cir. 1985) ........................................................13

*U.S. v. Hill*, 552 F.3d 686 (8th Cir. 2009) ...............................................................19

*U.S. v. Hull*, 419 F.3d 762 (8th Cir. 2005)........................................................ 14, 15

*U.S. v. Kilgore*, 58 F.3d 350 (8th Cir. 1995) ...........................................................17

*U.S. v. Mayweather*, 993 F.3d 1035 (8th Cir. 2021)................................................10

*U.S. v. Miller*, 11 F.4th 944 (8th Cir. 2021)............................................................10

*U.S. v. New*, 491 F.3d 369 (8th Cir. 2007)...............................................................11

*U.S. v. Orr*, 636 F.3d 944 (8th Cir. 2011)...............................................................15

*U.S. v. Perrin*, 659 F.3d 718 (8th Cir. 2011) ..........................................................14

*U.S. v. Ramirez*, 676 F.3d 755 (8th Cir. 2012) .......................................................10

*U.S. v. Smith*, 573 F.3d 639 (8th Cir. 2009)...................................................... 17, 19

*U.S. v. Stevenson*, 727 F.3d 826 (8th Cir. 2013).....................................................10

*U.S. v. Sullivan*, 2023 U.S. App. LEXIS 8395 (8th Cir. April 10, 2023)................16

Appellate Case: 26-1542   Page: 5   Date Filed: 06/02/2026 Entry ID: 5646846

*U.S. v. Tail*, 459 F.3d 854 (8th Cir. 2006) ........................................................ 14, 15

*U.S. v. Thunder*, 553 F.3d 605 (8th Cir. 2009) ..........................................20

*U.S. v. Vinton*, 631 F.3d 476 (8th Cir. 2011) ............................................. 11, 16, 17

*U.S. v. Williams*, 760 F.3d 811 (8th Cir. 2014) ................................. 11, 14, 17, 18

*U.S. v. York*, 357 F.3d 14 (1st Cir. 2004) ..........................................16

*U.S. v. Young*, 640 F.3d 846 (8th Cir. 2011) ............................................20

*Withrow v. Williams*, 507 U.S. 680 (1993) ..........................................17

## Statutes

18 U.S.C. § 3553 ..........................................................................21

28 U.S.C. § 1291 ..........................................................................2

## Other Authorities

U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY.............................. 22, 24, 25, 26

Appellate Case: 26-1542    Page: 6    Date Filed: 06/02/2026 Entry ID: 5646846

# JURISDICTIONAL STATEMENT

Defendant appeals following Defendant's conditional guilty plea, conviction, and sentencing in the Southern District of Iowa and the correlating revocation of his term of supervised release. (R. Doc. R. Doc. 56, 25-cr-7; R. Doc. 144, 14-cr-60; Add. p. 1). Jurisdiction was vested in the district court pursuant to 18 U.S.C. § 3231, Defendant having been named in an indictment filed February 11, 2025 and October 22, 2014. (R. Doc. 2, 25-cr-7; R. Doc. 2, 14-cr-60).

On January 14, 2025, Defendant was indicted in the Southern District of Iowa with Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1) (count 1); Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (count 2); and Possession of Obscene Visual Representation of the Sexual Abuse of Children, in violation of 18 U.S.C. §§ 1466A(b)(1) and (d)(4) (count 3). (R. Doc. 2, 25-cr-7). In 3:14-cr-60, a correlating Petition for Warrant or Summons for Offender Under Supervision was filed, which was supplemented January 15, 2025. (R. Doc. 123, 135, 14-cr-60).

On July 7, 2025, Defendant filed a motion to suppress, which, on September 23, 2025, was denied. (R. Doc. 24, 25, 38, 25-cr-7). Thereafter, on October 9, 2025, Defendant entered a conditional plea of guilty to count 1, Receipt of Child Pornography, before Chief U.S. Magistrate Judge Stephen B. Jackson Jr. (R. Doc. 41–44, 25-cr-7).

1

Appellate Case: 26-1542     Page: 7     Date Filed: 06/02/2026 Entry ID: 5646846

On March 17, 2026, Defendant appeared for combined sentencing and final revocation hearing.  (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; R. Doc, 56, 25-cr-7, R. Doc. 144, 14-cr-60, Addendum p. 1).

Judgment was entered and Defendant was sentenced to 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments.  (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; R. Doc, 56, 25-cr-7, R. Doc. 144, 14-cr-60, Add. p. 1).

On March 20, 2026, Defendant filed a timely Notice of Appeal.  (R. Doc. 59–60, 25-cr-7; R. Doc. 146–47, 14-cr-60).  This Court has jurisdiction to consider Defendant's appeal pursuant to 28 U.S.C. § 1291, authorizing jurisdiction of appeals from all final decisions of the district courts.

Appellate Case: 26-1542     Page: 8     Date Filed: 06/02/2026 Entry ID: 5646846

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. Whether Defendant's statements violated *Miranda*.

Authority

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

*U.S. v. Williams*, 760 F.3d 811 (8th Cir. 2014).

*U.S. v. Czichray*, 378 F.3d 822 (8th Cir. 2004).

*Minnesota v. Murphy*, 465 U.S. 420 (1984).

II. Whether Defendant's statements were involuntary.

Authority

*Minnesota v. Murphy*, 465 U.S. 420 (1984).

*U.S. v. Vinton*, 631 F.3d 476 (8th Cir. 2011).

*Smith v. Bowersox*, 311 F.3d 915 (8th Cir. 2002).

*U.S. v. Williams*, 760 F.3d 811 (8th Cir. 2014).

III. Whether the sentence was substantively unreasonable.

Authority

*Gall v. U.S.*, 552 U.S. 38, 41 (2007).

*U.S. v. Boykin*, 850 F.3d 985, 988 (8th Cir. 2017).

Appellate Case: 26-1542    Page: 9    Date Filed: 06/02/2026 Entry ID: 5646846

*U.S. v. Young*, 640 F.3d 846, 848 (8th Cir. 2011).

*U.S. v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009).

4

## STATEMENT OF THE CASE

This is a direct appeal by Defendant of the denial of Defendant's motion to suppress and Defendant's resulting sentence of 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments. (R. Doc. 24, 25, 38, 25-cr-7; R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; R. Doc, 56, 25-cr-7, R. Doc. 144, 14-cr-60, Add. p. 1).

On January 14, 2025, Defendant was indicted in the Southern District of Iowa with Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1) (count 1); Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (count 2); and Possession of Obscene Visual Representation of the Sexual Abuse of Children, in violation of 18 U.S.C. §§ 1466A(b)(1) and (d)(4) (count 3). (R. Doc. 2, 25-cr-7). In 3:14-cr-60, a correlating Petition for Warrant or Summons for Offender Under Supervision was filed, which was supplemented January 15, 2025. (R. Doc. 123, 135, 14-cr-60).

On July 7, 2025, Defendant filed a motion to suppress, which, on September 23, 2025, was denied. (R. Doc. 24, 25, 38, 25-cr-7). Defendant argued his statements to the U.S. Probation Officer were in violation of *Miranda* and, in addition, were involuntary. (R. Doc. 24, 25, 25-cr-7). The Government pointed to the Supreme Court's 1984 decision in *Minnesota v. Murphy*, 465 U.S. 420 (1984), holding a probationer meeting with his probation officer in the probation office as

5

ordered and admitting to crimes was not in custody for *Miranda* purposes and did not render the statements involuntary. (R. Doc. 28, 25-cr-7). On September 17, 2025, hearing was held on Defendant's motion. (R. Doc. 37, 25-cr-7). The Government called U.S. Probation Officers Amy Alvarez and Elizabeth Yager, and the court admitted the Government's exhibit one. (R. Doc. 37, 25-cr-7; Supp. TR 3–35). On September 23, 2025, the court entered its order denying Defendant's motion to suppress, finding *Murphy* controlling. (R. Doc. 38, 25-cr-7). The district court found:

> The Supreme Court's decision in *Minnesota v. Murphy* controls here. In *Murphy*, a probationer met with his probation officer at her office as ordered and admitted to committing rape and murder years earlier. 465 U.S. 420, 422–23 (1984). The Court held that the probationer was not in custody for *Miranda* purposes, emphasizing that a probationer's general obligation to appear and answer questions truthfully "did not in itself convert [the] otherwise voluntary statements into compelled ones." *Id*. at 427.

> *Murphy* explicitly limited its holding to non-custodial settings, emphasizing that the probationer "was not under arrest and that he was free to leave at the end of the meeting." *Id*. at 429 n.5. A "different question would be presented," the Court explained, "if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting." *Id*.

> Applying these principles, the Court finds that Defendant was not in custody during his interview with Officer Yager. Like the probationer in *Murphy*, Defendant met with Officer Yager at a probation office pursuant to direction from probation officials. Although she was not his assigned probation officer, Defendant had met her previously and was familiar with her. His obligation to respond truthfully to probation officers' inquiries, mandated by the conditions

6

Appellate Case: 26-1542     Page: 12     Date Filed: 06/02/2026 Entry ID: 5646846

of his supervised release, does not transform this otherwise non-custodial meeting into custodial interrogation.

Defendant argues that the interview occurred in an inherently coercive environment. The probation office, while located in a federal courthouse, does not possess the same inherently coercive atmosphere as a police station or jail. Defendant was familiar with this environment, having regularly reported there during his supervised release. The record contains no evidence that Defendant was restrained, that strong-arm tactics were employed, or that he was told he was under arrest. Indeed, Defendant was not arrested until after the probation officer filed a revocation motion.

That Defendant was required to appear at the probation office does not, standing alone, establish custody for *Miranda* purposes. As *Murphy* makes clear, a probationer's obligation to report and answer questions truthfully does not convert voluntary statements into compelled ones.

…

Defendant's alternative argument—that his statements were involuntary—fares no better.

…

The record reveals no coercive police activity or overreaching. Defendant reported to a familiar environment—the probation office where he had appeared many times during his supervised release. Officer Yager's questioning addressed an apparent violation of supervised release conditions and fell squarely within the scope of routine probation supervision. Nothing in the record suggests that Officer Yager employed threats, promises of leniency, or other coercive tactics. The questioning was brief and focused on matters directly related to Defendant's compliance with his conditions of release. The Court finds credible Officer Yager's testimony concerning the Probation Office meeting and Officer Amy Alvarez's account of the RRC encounter.

7

The principles announced in *Murphy* apply with equal force here. Defendant's obligation to report to the probation office and answer questions truthfully—a standard condition of supervised release—does not render his statements involuntary.

(R. Doc. 38, 25-cr-7, pp. 4–7).

Thereafter, on October 9, 2025, Defendant entered a conditional plea of guilty to count 1, Receipt of Child Pornography, before Chief U.S. Magistrate Judge Stephen B. Jackson Jr.  (R. Doc. 41–44, 25-cr-7).

The Final Presentence Investigation Report ("PSR") provided an advisory guideline range of 168–210, which became 180–210 due to the statutory minimum. (PSR pp. 26 ¶ 142 at R. Doc. 51, 25-cr-7).  Both parties filed sentencing memoranda. (R. Doc. 53–54, 25-cr-7).  The advisory guideline range for the revocation was 18–24 months.  (R. Doc. 145, 14-cr-60).

On March 17, 2026, Defendant appeared for combined sentencing and final revocation hearing.  (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; R. Doc, 56, 25-cr-7, R. Doc. 144, 14-cr-60, Addendum p. 1).

Judgment was entered and Defendant was sentenced to 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments.  (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; R. Doc, 56, 25-cr-7, R. Doc. 144, 14-cr-60, Add. p. 1).

Appellate Case: 26-1542     Page: 14     Date Filed: 06/02/2026 Entry ID: 5646846

## SUMMARY OF THE ARGUMENT

Defendant contends his statements should have been suppressed because they were in violation of *Miranda* and involuntary.

Defendant contends his sentence of 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments is substantively unreasonable and contrary to justice.

This brief is filed pursuant to the direction of *Anders v. California*. 386 U.S. 738 (1967); *accord Robinson v. Black*, 812 F.2d 1084 (8th Cir. 1987). Counsel directs the Court to "anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel further requests the right to withdraw.

9

Appellate Case: 26-1542    Page: 15    Date Filed: 06/02/2026 Entry ID: 5646846

# ARGUMENT

## I. DEFENDANT'S STATEMENTS SHOULD HAVE BEEN SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF *MIRANDA* AND ITS PROGENY

### *A. Standard of Review*

When considering the denial of a motion to suppress, the Court reviews the district court's findings of fact for clear error and its legal conclusions *de novo*. *U.S. v. Miller*, 11 F.4th 944, 952 (8th Cir. 2021); *U.S. v. Mayweather*, 993 F.3d 1035, 1040 (8th Cir. 2021); *U.S. v. Stevenson*, 727 F.3d 826, 829 (8th Cir. 2013); *accord U.S. v. Ramirez*, 676 F.3d 755, 760 (8th Cir. 2012) (findings of fact reviewed for clear error but whether those facts constitute exigent circumstances reviewed *de novo*).

### *B. Admission of Defendant's Statements to the U.S. Probation Officer in the U.S. Probation Office Violates* Miranda

For a defendant's statements to be admissible at trial, criminal defendants must have been advised of their *Miranda* rights when subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As originally articulated by the *Miranda* court, custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (footnote omitted). Thus, for *Miranda* warnings to be required pursuant to the Fifth Amendment, two circumstances must be found: 1. Custody; and 2. Interrogation.

10

'Custody' is an objective consideration, determined by examining "the extent of the restraints placed on the suspect during the interrogation in light of whether 'a reasonable man in the suspect's position would have understood his situation' to be one of custody."  *State v. Ortiz*, 766 N.W2d 244, 251 (Iowa 2009) (citing *Berkemer v. McCarty*, 468 US. 420, 442 (1984)); *see also Cal. v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[t]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (citation omitted)); *U.S. v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (quoting *U.S. v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (same)); *U.S. v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011) (citation omitted) (same).  The determination of whether a defendant was in custody is examined on a totality of the circumstances basis:  if, given the totality of the circumstances, a reasonable person would not have felt at liberty to end the interrogation and leave or ask law enforcement to leave, one is in custody for *Miranda* purposes.  *Williams*, 760 F.3d at 814 (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)); *Vinton*, 631 F.3d at 481 (citing *U.S. v. New*, 491 F.3d 369, 373 (8th Cir. 2007)).

Here, Defendant was in custody, having been ordered by the district court to reside at the RRC—a facility associated with the Seventh Judicial District for the State of Iowa and the U.S. District Court for the Southern District of Iowa— following revocation of his supervised release.  During the time of his ordered

11

residence, on November 1, 2024, after being notified by RRC staff of the location of a cell phone alleged to have belonged to Defendant, US Probation Officers Amy Alvarez and Kristin Schrems responded to the RRC.  (Supp. TR 4:8–6:1).  Officers Alvarez and Schrems confronted Defendant and instructed Defendant to report to the US Probation Office at the US Courthouse.  (*Id.*).  Defendant complied and, the same day, reported to the US Probation Office at the US Courthouse.  (*Id.*; Supp. TR 7:3–35:7).

When Defendant reported to the US Probation Office, USPO Yager questioned Defendant, during which time Defendant is alleged to have admitted the cell phone was his and made other incriminating statements.  (*Id.*).  To meet at the Probation Office, Defendant walked from the RRC to the U.S. Courthouse, entered the federal courthouse through security, proceeded to the basement of the courthouse, gain admission from the U.S. Probation Office through a secured door and be escorted to a conference room, and proceed to meet with the officer behind a closed door.  (*Id.*).  At the time of this questioning, Defendant was subject to conditions, including reporting to the probation office as directed and to truthfully answer questions from the probation office.  (*Id.*).

Upon questioning, Defendant was seated on the far side from the door of the conference room, behind a desk approximately four to six feet long; to exit, Defendant would have to proceed past the Probation Officer, exit the conference

12

room, exit through the secured door approximately 15–20 feet from the conference room and past a receptionist, only to then proceed back to the main floor of the courthouse and exit the building. (*Id.*). Following questioning with the officer, Defendant was directed to wait in the lobby, where the U.S. Marshals responded to arrest Defendant. (*Id.*). At no time was Defendant advised of his right to remain silent, his right to refuse to answer questions, or his right to counsel. (*Id.*).

Such is not a location where a reasonable person would have felt free to leave, to end the interrogation, or to ask the US Probation Officer to leave. Rather, a reasonable person, based on the totality of the circumstances, would have felt restrained and would have felt he was in custody. Unlike the home, where courts have held defendants were not in custody because they were "'on [their] own turf,'" *U.S. v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *U.S. v. Rorex*, 737 F.2d 753, 756 (8th Cir. 1984)), the RRC and, subsequently, the U.S. Probation Office is custodial by nature, more akin to a jail or prison setting. The U.S. Probation Office setting, by contrast with a home or other location of comfort, is "'indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'" *Id.* (quoting *U.S. v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985)).

> *Miranda* itself, surveying police manuals of the time, juxtaposed the police station, where "the investigator possesses all the advantages," with a suspect's "own home," where "he may be confident, indignant, or recalcitrant, ... more keenly aware of his rights and more reluctant to tell of his indiscretions and criminal behavior within the walls of his home."

13

*Williams*, 760 F.3d at 815 (citing *Miranda*, 384 U.S. at 449–50). The U.S. Probation Office setting found here does not provide this same level of comfort, where Defendant "may be confident, indignant, or recalcitrant;" quite the opposite:  such is a setting of discomfort, restriction, and constraints.

Nor are there other indicators which would weigh against a finding of custodial status, such as being told Defendant's submission to inquiry was voluntary. *Id.* at 814–15.  "We have long regarded these admonitions as weighty in the custody analysis."  *U.S. v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011).  Here, Defendant was not told questioning by the US Probation Officer was voluntary and Defendant was not told he could terminate the interrogation at will:  in fact, Defendant was court ordered to answer questions posed to him by the US Probation Officer, short of invocation of a legal privilege, truthfully.

Interrogation, for purposes of determining the necessity of *Miranda* warnings, includes express questioning as well as the words or actions of the law enforcement officer the officer should know are reasonably likely to elicit an incriminating response.  *U.S. v. Tail*, 459 F.3d 854, 857 (8th Cir. 2006) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)); *U.S. v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (citation omitted); *see also State v. Miranda*, 672 N.W.2d 753, 761 (Iowa 2003) (citing *State v. Peterson*, 663 N.W.2d 417, 424 (Iowa 2003)) (interrogation "refers not only to express questioning, but also to any words or actions on the part of the

14

police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").

For *Miranda* purposes, one must demonstrate only words or actions the officer *should know* are *reasonably likely* to elicit an incriminating response. *See, e.g.*, *U.S. v. Tail*, 459 F.3d at 857 (citation omitted). While neither polite conversation, *Tail*, 459 F.3d at 858 (citations omitted), nor factual assertions serving only to inform a suspect of the status of the case or investigation into her activities, *Hull*, 419 F.3d at 767 (citations omitted); *accord U.S. v. Orr*, 636 F.3d 944, 954 (8th Cir. 2011) (citations omitted), constitute interrogation, such is not what occurred in the instant matter.

Here, the US Probation Officer did not approach or confront Defendant for the purpose of polite conversation or inform him as to the status or investigation into his activities. The Probation Officer confronted Defendant after having responded to the RRC in the performance of her duties and in response to a reported violation (and potential criminal activity). The Officer's interaction with Defendant are such she should know the interrogation was reasonably likely to elicit an incriminating response, particularly as the interrogation occurred after the "cursory search" of the phone and locating internet capacity, undisclosed internet identifiers, and potential child pornography. Such falls within the meaning of interrogation, and therefore

15

within the requirements of *Miranda*.  *But see Minnesota v. Murphy*, 465 U.S. 420, 427–440 (1984) (holding probationer meeting with probation officer as ordered in probation office, who admitted criminal activity, was not in custody for *Miranda* and was the general obligation to appear and answer questions truthfully did not convert the voluntary statements into compelled ones).

Defendant's status on supervised release does not change this analysis.  The Fifth Amendment privilege still applies to protect individuals on supervised release when questioning could expose the individual to future criminal prosecution.  *U.S. v. Sullivan*, 2023 U.S. App. LEXIS 8395 at *4 (8th Cir. April 10, 2023); *U.S. v. York*, 357 F.3d 14, 24 (1st Cir. 2004) (noting a probationer has a valid Fifth Amendment claim if probation officers ask a question and compels him to answer which implicates him in a crime other than that for which he has been convicted); *Trobee v. U.S.*, 2011 U.S. Dist. LEXIS 14003 * (Dist. S.D. Feb. 11, 2011) (discussing Fifth Amendment application to persons on supervised release) (citing *Minnesota v. Murphy*, 465 U.S. 420 (1984)).

*C.  Admission of Defendant's Statements to the U.S. Probation Officer in the U.S. Probation Office Were Involuntary*

In addition to and independent of *Miranda* requirements, statements made to law enforcement must be voluntary.  To be voluntary, statements must be "'the product of an essentially free and unconstrained choice by [their] maker.'"  *U.S. v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) (quoting *Schneckloth v. Bustamonte*, 412

16

U.S. 218, 225 (1973)).  An examination of voluntariness is an examination of the totality of the circumstances.  *Smith v. Bowersox*, 311 F.3d 915, 922 (8th Cir. 2002) (citing *Withrow v. Williams*, 507 U.S. 680, 693 (1993)).

Coercive activity extorting a statement from the defendant renders a statement involuntary, *Vinton*, 631 F.3d at 482 (quoting *Jenner v. Smith*, 982 F.2d 329, 333 (8th Cir. 1993)), and it is improper for a police officer to obtain an admission through an express—or even implied—promise of leniency.  *Smith*, 311 F.3d at 922 (citing *Brady v. U.S.*, 397 U.S. 742, 754 (1970)).  A promise of leniency will render the admission involuntary if it overcomes the defendant's free will and impairs her capacity for self-determination.  *Smith*, 311 F.3d at 922 (citing *Culombe v. Connecticut*, 367 U.S. 568, 576 (1961); *U.S. v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995)); *see also Williams*, 760 F.3d at 815–16 ("Statements and consent are involuntary where an individual's free will is overborne by coercive police activity and he loses the capacity for self-determination." (citing *Vinton*, 631 F.3d at 482).

Additionally, any waiver of *Miranda* must also be made knowingly, intelligently, and voluntarily.  *Ortiz*, 766 N.W2d at 251 (citing *Miranda*, 384 U.S. at 444, 475).

> For a waiver to be made knowingly and intelligently, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." For a waiver to be made voluntarily, the relinquishment of the right must have been voluntary, meaning it was the product of the suspect's

17

free and deliberate choice rather than intimidation, coercion, or deception.

*Id.* (citations omitted). This determination is made by inquiring into the totality of the circumstances. *Id.* (citation omitted).

Here, any statements made were involuntarily given due to the inherently coercive nature of the setting, being ordered to and present within the RRC followed by ordered presence within the US Probation Office located within the US Courthouse, akin to a jail or police department setting, particularly while Defendant remained on supervised release and subject to Court ordered conditions. *Contrast with Williams*, 760 F.3d at 815 ("The physical location of this interview—in familiar surroundings and close to the exit—did not serve to isolate Williams in a coercive setting."). This inherently coercive setting was sufficient to cause Defendant's will to be overborne, rendering his statements involuntary. *But see Minnesota v. Murphy*, 465 U.S. 420, 427–440 (1984) (holding probationer meeting with probation officer as ordered in probation office, who admitted criminal activity, was not in custody for *Miranda* and was the general obligation to appear and answer questions truthfully did not convert the voluntary statements into compelled ones).

18

Appellate Case: 26-1542    Page: 24    Date Filed: 06/02/2026 Entry ID: 5646846

## II.  DEFENDANT'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE AND CONTRARY TO JUSTICE

### *A.  Standard of Review*

When reviewing a sentence, a two-prong approach is utilized.  First, the Court considers whether the district court committed any "'significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'"  *U.S. v. Bevins*, 848 F.3d 835, 839 (8th Cir. 2017) (quoting *Gall v. U.S.*, 552 U.S. 38, 51 (2007)); *accord U.S. v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009); *U.S. v. Hill*, 552 F.3d 686, 690 (8th Cir. 2009) (citation omitted); *U.S. v. Smith*, 573 F.3d 639, 658–59 (8th Cir. 2009) (citations omitted).  The *Gall* list of procedural error, however, is not all-inclusive and other errors may be considered.  *U.S. v. Desantiago-Esquivel*, 526 F.3d 398, 401 (8th Cir. 2008).

After considering procedural issues, the Court's second prong is to consider the substantive reasonableness of the sentence.  *Gall*, 552 U.S. at 51; *accord Feemster*, 572 F.3d 455 at 462 (citation omitted).  In so doing, a deferential abuse of discretion standard is applied.  *Gall*, 552 U.S. at 41; *accord U.S. v. Boykin*, 850 F.3d 985, 988 (8th Cir. 2017) (citation omitted); *Bevins*, 848 F.3d at 841 (citation omitted); *U.S. v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (citation omitted).  The

19

appellate court is to examine the totality of the circumstances when applying this standard. *Gall*, 552 U.S. at 51; *accord Feemster*, 572 F.3d at 461:

> A district court abuses its discretion when it (1) 'fails to consider a relevant factor that should have received significant weight'; (2) 'gives significant weight to an improper or irrelevant factor'; or (3) 'considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'

*Feemster*, 572 F.3d at 461 (citation omitted); *accord Boykin*, 850 F.3d at 988. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

"[T]he same 'deferential abuse-of-discretion' standard that applies to initial sentencing proceedings, considering both the 'procedural soundness of the district court's decision and the substantive reasonableness of the sentence imposed,'" is applied to a revocation sentence. *U.S. v. Young*, 640 F.3d 846, 848 (8th Cir. 2011) (quoting *U.S. v. Thunder*, 553 F.3d 605, 607 (8th Cir. 2009)).

If a sentence is within the Guideline range, an appellate court may, but is not required, apply a presumption of reasonableness. *Feemster*, 572 F.3d at 461 (citing *Gall*, 522 U.S. at 51). If, however, the sentence is outside the Guidelines, the appellate court "'must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* at 461–62 (citing *Gall*, 522 U.S. at 51)).

20

## B. *Defendant's Sentence was Unreasonable and Greater than Necessary to Achieve the Goals of Sentencing*

The District Court imposed an unreasonable sentence contrary to justice in sentencing Defendant, imposing a sentence longer than necessary to achieve the goals of sentencing. Lengthy incarceration, like that imposed in this case, was not necessary to accomplish the goals of sentencing of promoting respect for the law, affording adequate deterrence, and protecting the public. 18 U.S.C. § 3553(a)(2)(A)–(C).

A period of incarceration beyond the bottom of the Guidelines was greater than necessary to do justice and to achieve the goals of sentencing. To the contrary, the totality of the circumstances, including the nature and circumstances of Defendant's background, suggested a bottom of the Guidelines was appropriate and sufficient to achieve the goals of sentencing. Rehabilitation was possible—particularly considering scientific research indicating an extremely low estimated rate of recidivism, particularly when compared to other offenders—and should have been a primary goal in determining an appropriate disposition. 18 U.S.C. § 3553 (a)(2)(B)–(C).

In the context of this category of offense, Defendant's conduct here was not unusually aggravating. As noted and found by the U.S. Sentencing Commission:

21

a. "The typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography. Of the 512 child pornography production offenders sentenced in fiscal year 2019, 60.3 percent were related to or otherwise maintained a position of trust over the minor victim, whether through familial relationships or by virtue of the offender's role as a teacher or a coach, for example." U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Production Offenses, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (accessed March 18, 2025)

Here, the circumstances of Defendant's offense, compared to production offenders, did not suggest the more aggravating circumstances found in similar cases.

b. "[N]on-production child pornography offenses increasingly involve voluminous quantities of videos and images that are graphic in nature, often involving the youngest victims." Some offenders were noted by the Sentencing Commission to "possess[ ] and distribut[e] millions of images and videos." U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY,

Appellate Case: 26-1542    Page: 28    Date Filed: 06/02/2026 Entry ID: 5646846

Non-Production Offenses, available at https://www.ussc.gov/research/research-reports/report-glance-federal-sentencing-child-pornography (accessed March 10, 2026).

Here, such indicates the volume of Defendant's images, and the nature thereof, failed to indicate an unusually aggravating circumstance compared to comparable offenses and similarly situated offenders. And, comparable non-production offenders are noted by the Sentencing Commission itself to "increasingly involve voluminous quantities" of graphic images and videos, sometimes "millions." Defendant's offense did not involve "millions," and was not unusually aggravating or contrary to similarly situated offenders.

    c. Additionally, the ubiquity of smart phones, publicly available wifi internet, as well as the proliferation of chatting and file trading applications render the rationale behind many of the Guidelines enhancements increasingly obsolete. "Enhancements that were initially intended to target more serious and more culpable offenders have resulted in an increase in the average guideline minimum and average sentence imposed for non-production child pornography offenses." *Id.* In fact, the Commission reports 95% of offenders receive enhancements for victims under the age of 12; 77% of cases involve

Appellate Case: 26-1542   Page: 29   Date Filed: 06/02/2026 Entry ID: 5646846

600+ images; and 84% of cases involve images depicting abuse of an infant or toddler. *Id.*

Here, such indicated the enhancements found in this matter and the circumstances of the offense were not atypical or significantly aggravating when compared to comparable offenses and similarly situated offenders. Additionally, even the Commission notes the Guidelines in this area fail to reflect their original intent and are, instead, being applied to the vast majority of cases and disproportionately driving up sentences without a correlating basis in science and research. The arbitrary cut off of 600 images is, by nature, arbitrary, particularly when considering the Commission's acknowledgement the number of images is "increasingly involve[ing] voluminous quantities" "[f]acilitated by advancements in digital and mobile technology…." *Id.*

    d. "Although sentences imposed remain lengthy, courts increasingly apply downward variances in response to high guideline ranges that apply to the typical non-production offender." *Id.*

Here, such indicated a downward variance below Defendant's suggested Guideline range would be consistent with national practices in similar cases.

    e. "In 2012, the Commission recommended that Congress provide the Commission express authority to amend the guidelines that were promulgated pursuant to specific congressional directives. Such

24

Appellate Case: 26-1542    Page: 30    Date Filed: 06/02/2026 Entry ID: 5646846

authority would allow the Commission to account for changes in typical offense behavior and advancements in technology. … As courts contend with the outdated statutory and guideline structure, sentencing disparities among similarly situated offenders have become increasingly pervasive." The Commission notes possession offenders are receiving sentences which vary widely, from probation to 228 months; receipt offenders also have disparity issues in receiving sentences varying from 37–180 months; and distribution offenders likewise have disparity issues in receiving sentences varying from less than 1–240 months. *Id.*

Here, the Commission itself calls for departure and variance from the Guidelines as a result of the problems created by the Guidelines in child pornography cases. Departure and/or variance, then, was consistent with apparent Commission directives. Additionally, a sentence at the bottom of Defendant's suggested Guideline calculation would be consistent with sentences for other similar offenders noted by the Commission.

f.  Non-production CP offenders had an overall recidivism rate of 27.6%. *Id.*

Here, even a 27.6% recidivism rate is less than other offenders and means 72.4% had no recidivism at all. When one takes into account the other

25

considerations specific to Defendant in this case, using the rates and findings offered by the Commission itself, one can rest assured this rate could be even lower.

g. The Commission recommends certain factors be considered when imposing sentence in non-production CP offenses, including content, community, and conduct. *Id.* As to content, 52% of such offenders included images or videos of infants and toddlers, while some offenders possessed and distributed "millions of images and videos." As to community, "more than 40% of non-production offenders participated in an online child pornography community." As to content, the Commission suggests Courts consider "engagement in sexually abusive or exploitative conduct in addition to the pornography offense" noting "nearly half (48%) of non-production [CP] offenders engaged in aggravating sexual conduct prior to, or concurrently with, the instant non-production [CP] offense." *Id.*

Here, as noted, Guideline enhancements for such matters fail to sufficiently distinguish between the most and least culpable. Additionally, compared to persons with "millions," of images, although Defendant was certainly responsible for his conduct, he remained on the lower end of the culpability spectrum when compared to other offenders with similar offenses. Further, any conduct in chatting and sharing

26

CP with others, according to the Commission, is common—nearly half of all non-production offenders engage in a similar kind of "community."

Although Defendant's advisory Guideline range was 180–210, (PSR pp. 26 ¶ 142 at R. Doc. 51, 25-cr-7), and 18–24 months for the revocation, (R. Doc. 145, 14-cr-60), Defendant's ultimate sentence of 200-months incarceration consecutive to 24 months' incarceration on the revocation, plus 120 months' supervised release and assessments was greater than necessary to do justice. (R. Doc. 55, 25-cr-7; R. Doc. 143, 14-cr-60; Add. p. 1). Based upon Defendant's history and his acceptance of responsibility, Defendant's resulting Guideline sentence is substantively unreasonable.

## CONCLUSION

For the foregoing reasons, Defendant Jacob Bertrand respectfully requests this Court reverse the district court's denial of his motion to suppress and vacate his sentence and remand the matter for resentencing.

This brief is filed pursuant to the direction of *Anders v. California*. 386 U.S. 738 (1967); *accord Robinson v. Black*, 812 F.2d 1084 (8th Cir. 1987). Counsel directs the Court to "anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel further requests the right to withdraw.

Appellate Case: 26-1542     Page: 33     Date Filed: 06/02/2026 Entry ID: 5646846

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, & Jaeger
2322 East Kimberly Road, Suite 140S
Davenport, Iowa 52806
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT-APPELLANT**

28

# CERTIFICATE OF COMPLIANCE

The undersigned certifies the foregoing brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B) because this brief contains 5,785 words. The undersigned further certifies this brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, Times New Roman font face in font size 14. The undersigned certifies this brief and addendum are virus free.

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, & Jaeger
2322 East Kimberly Road, Suite 140S
Davenport, Iowa 52806
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754/563-355-6666
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT-APPELLANT**

Appellate Case: 26-1542     Page: 35     Date Filed: 06/02/2026 Entry ID: 5646846

# CERTIFICATE OF FILING AND SERVICE

The undersigned certifies the foregoing instrument was electronically filed June 1, 2026 with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses registered with the CM/ECF system. A paper copy will be mailed to Defendant within 5 days of receipt of the notice the brief has been filed.

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, & Jaeger
2322 East Kimberly Road, Suite 140S
Davenport, Iowa 52806
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754/563-355-6666
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT-APPELLANT**

Appellate Case: 26-1542    Page: 36    Date Filed: 06/02/2026 Entry ID: 5646846